**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARCUS BECERRA,** *et al.* | Case No.: **4:11-CV-03586 YGR** |
| **Plaintiffs,** | **ORDER DENYING MOTIONS OF DEFENDANT AND OF PLAINTIFFS FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **RADIOSHACK CORPORATION,** *et al.*, | |
| **Defendant(s).** | |

Plaintiffs Marcus Becerra, Natalie Ciebrant, Phillip Dietro, and Ariel Gonzalez (collectively "Plaintiffs") bring this action, individually and on behalf of a putative class,[1] against Defendant RadioShack Corporation ("RadioShack" or "Defendant") for failure to reimburse them for uniforms. Plaintiffs allege four claims: (1) common law failure to reimburse expenses/provide required uniform; (2) violation of California's Unfair Competition Law ("UCL"); (3) violation of California Labor Code section 2802; and (4) violation of California Labor Code section 1198.

Defendant RadioShack has filed a Motion for Summary Judgment of all claims on the grounds that RadioShack's dress requirements do not constitute a uniform and RadioShack is not required to reimburse its employees for expenses incurred in complying with those dress

---

[1] No class has been certified in this action, nor has class certification yet been sought by any party.

United States District Court
Northern District of California

requirements.  Plaintiffs oppose Defendant's Motion for Summary Judgment and affirmatively move for summary judgment on their reimbursement claim under Labor Code section 2802.

The Court heard the parties' arguments on September 25, 2012, and took the matter under submission.

Having carefully considered the papers submitted, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment.

## BACKGROUND

The following facts are undisputed unless otherwise stated.  Plaintiffs are former sales team employees of Defendant RadioShack Corporation who operated or managed RadioShack Target Mobile kiosks within Target retail stores across California.  (Defendant's Separate Statement of Facts [Dkt No. 46-2] and evidence cited therein [hereinafter, "DF"], Fact 5.)  Plaintiffs and other RadioShack Target Mobile employees were required to comply with RadioShack's Target Mobile Dress Guidelines ("the Guidelines").  (DF, Fact 1.)  The Guidelines require male retail team members working at these kiosks to wear pants that are "Dockers-style chinos" or "twills" in "traditional khaki only."  (DF, Fact 4.)  Female retail team members are required to wear either pants that are "Dockers-style chinos" or "twills" in "traditional khaki only," or skirts in "twill or wool" that are in "[t]raditional khaki only[.]"  (DF Fact 4.)  Defendant does not provide such clothing nor does it reimburse retail team members for its cost.  (Plaintiffs' Responsive Separate Statement And Statement of Undisputed Facts In Support of Cross-Motion for Summary Judgment [Dkt No. 47-1] and evidence cited therein [hereinafter "PF"], Fact 8.)

## STANDARDS APPLICABLE TO THIS MOTION

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute

2

as to any material fact and the moving party is entitled to judgment as a matter of law.  Any party

seeking summary judgment bears the initial burden of identifying those portions of the pleadings and

discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the

case.  *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

"genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

party.  *Id.*  When deciding a summary judgment motion, a court must view the evidence in the light

most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Anderson*, 477

U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).

Where the moving party will have the burden of proof at trial, it must demonstrate

affirmatively that no reasonable trier of fact could find other than for the moving party.  *Soremekun*

*v.Thrifty Payless, Inc.*, 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where the nonmoving party

will bear the burden of proof at trial, the moving party can prevail merely by pointing out the

absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25.  If the

moving party meets its initial burden, the opposing party must then set out specific facts showing the

existence of a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 250; *see*

*also* Fed. R. Civ. P. 56(c), (e).

Here, both Plaintiffs and Defendant seek summary judgment.  In order to prevail on their

motion, Plaintiffs must demonstrate affirmatively that it has proven each element of their claim for

reimbursement under Labor Code section 2802.  *See S. California Gas Co. v. City of Santa Ana*, 336

F.3d 885, 888 (9th Cir. 2003) (noting that the party with the burden of persuasion at trial must

establish "beyond controversy every essential element of its" claim).  Defendant, to succeed on its

motion, must identify the absence of evidence to support Plaintiffs' case.  *See Nissan Fire & Marine*

*Ins. Co., Ltd. v. Fritz Cos, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("A moving party without the

ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment"). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03. Accordingly, if neither party can meet their burden of persuasion, both parties' motions for summary judgment must be denied.

## DISCUSSION

California Labor Code section 2802(a) requires that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." In addition to the Labor Code provisions, the California Industrial Welfare Commission or "IWC" has both constitutional and statutory authority to adopt industry-wide "wage orders" prescribing the minimum wages, maximum hours, and standard conditions of employment for employees in California. *Indus. Welfare Com. v. Superior Court*, 27 Cal. 3d 690, 697-98 (1980) (citing Cal. Const., art. XIV, sect. 1; Lab. Code, §§ 70-74, 1171-1204). Wage orders are "quasi-legislative regulations and are construed in the same manner as statutes under the ordinary rules of statutory construction." *Securitas Sec. Servs., USA, Inc. v. Sup. Ct.,* 197 Cal.App.4th 115, 121 (2011) (*citing Singh v. Sup. Ct.*, 140 Cal.App.4th 387, 392 (2006)). These wage orders are codified in Title 8 of the California Code of Regulations.

The parties agree that Wage Order 7-2001 (hereinafter "Wage Order 7"), applicable to the "mercantile industry," is the wage order covering the putative class members here. Section 9 of Wage Order 7 provides that "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the

employer." 8 Cal. Code Reg. § 11070.  It further provides that "[t]he term 'uniform' includes wearing apparel and accessories of distinctive design or color."  *Id.*

The crux of the parties' dispute here is the meaning of the term "uniform," and more specifically the meaning of "*distinctive* design or color," for purposes of Wage Order 7. Interpretation of the term "uniform" in this or any other Wage Order is apparently a matter of first impression in the courts.[2]

Federal courts interpreting a state law look to the state's rules of statutory interpretation and attempt to determine what meaning the state's highest court would give it.  *Bass v. County of Butte,* 458 F.3d 978, 981 (9th Cir. 2006).  Under California Supreme Court precedent, courts "start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context." *Martinez v. Combs,* 49 Cal. 4th 35, 51 (2010).  "If the words themselves are not ambiguous, [courts] presume the Legislature meant what it said, and the statute's plain meaning governs."  *Id.*

The California Supreme Court has also held that "the IWC's Wage Orders are entitled to "extraordinary deference."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012). "[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions [by the IWC] for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." *Id.* at 1026-27 (quoting *Indus. Welfare Com. v. Superior Court, supra,* 27 Cal.3d at 690, 602 (1980)).

---

[2]   The parties cite no published California opinions, or any opinion of the federal courts interpreting California law, as to what constitutes a "uniform" for purposes of the IWC Wage Orders or Labor Code § 2802, nor has the Court found any.  *Cf., e.g., O'Connor v. Starbucks,* 2008 WL 2761586 (N.D. Cal. July 14, 2008) (assuming, based upon parties' agreement, that apron was a "uniform" under Wage Order 7, section 9); *In re Work Uniform Cases,* 133 Cal.App.4th 328, 345 (2005) (holding that public entities were not required to pay the cost of employee uniforms under Labor Code § 2802 without considering what constituted a "uniform"); *Department of Industrial Relations v. U.I. Video*, 55 Cal.App.4th 1084 (1997) (considering breach of agreement settling "uniform" violation claims where no determination of liability had been made).

United States District Court
Northern District of California

Here, both parties argue that the plain meaning of the phrase "distinctive design or color" is unambiguous, yet they reach divergent results. Plaintiffs argue that "distinctive" means "specific," and so long as the employer has specified a particular design or a particular color of wearing apparel, that apparel is a "uniform." Thus, Plaintiffs argue that Defendant's requirement of pants of a specific design ("Dockers-style") and a specific color ("traditional khaki") means that the required apparel is a uniform under Wage Order 7. Defendant, on the other hand, submits that "distinctive means "unique or uncommon." Thus, because "traditional khaki" and "Dockers-style" are not uncommon or unique, the requirement to wear pants of this type does not amount to requiring a "uniform" under Wage Order 7.

The Court finds that the term "distinctive" can reasonably be read to mean either "specific" (as Plaintiffs contend) or "unique or uncommon" (as Defendant contends) and is therefore ambiguous standing on its own. As a result, the Wage Order's definition of "uniform" is ambiguous as well.

When the meaning of an enactment is not plain from the words itself, a court may look to an agency's interpretations of its meaning. *See Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1103 (2007). The parties cite interpretations by the IWC as well as the Department of Labor Standards Enforcement ("DLSE"), the agency charged with enforcement of the Wage Orders and Labor Code section 2802. *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 561-62 (1996). Defendants rely on the DLSE Enforcement Policies and Interpretations Manual ("DLSE Enforcement Manual"), DLSE Opinion Letters, and the IWC's "Statement of Basis" for a previous

United States District Court
Northern District of California

iteration of Wage Order 7 issued in 1980.[3]  Plaintiffs likewise rely on the DLSE Enforcement Manual and various DLSE Opinion Letters.

As to a matter of statutory interpretation, the IWC's Statement of Basis is entitled to deference in its interpretation of the Labor Code and of the meaning of the Wage Orders it promulgates.  The IWC is vested with "quasi-legislative authority."  *Indus. Welfare Com.*, 27 Cal. 3d at 702.  Section 1177 of the California Labor Code requires the IWC to include a "statement as to the basis upon which the order is predicated" so that the public knows "how and why" the IWC took the action that it did after a period of public comment and hearings.  *Id.* at 709-711.  The California Supreme Court, specifically examining the Statements of Basis in the IWC's 1980 Wage Orders held that those Statements of Basis fulfilled the requirements of Labor Code section 1177.  *Id.*  However, the California courts have held repeatedly that DLSE's interpretations in the DLSE Enforcement Manual and in its Opinion letters are not entitled to deference, but that courts "may give them whatever persuasive weight they carry."  *Sumuel v. ADVO, Inc.*, 155 Cal. App. 4th 1099, 1109 (2007) (citing *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) and *Tidewater*, 14 Cal. 4th at 577 [holding that DLSE Enforcement Manual was not entitled to higher level of deference accorded a regulation because it was not adopted consistent with the Administrative Procedures Act's requirements of public notice and comment].)

The Statement of Basis for the 1980 iteration of what is now Wage Order 7 provided as follows:

> The definition and [DLSE] enforcement policy is sufficiently flexible to allow the employer to specify basic wardrobe items which are usual and generally usable in the

---

[3] Defendant also relies on informal email correspondence in which a DLSE employee indicated that jeans could constitute a "uniform" only when an employer specifies a "particular color" of jeans.  (*See* Defendant's Notice of Lodgement in Support of Motion for Summary Judgment [Dkt No. 46-6 through 46-14, hereinafter "NOL"], Exh. 5.)  The Court denied the request for judicial notice because the email is unauthenticated and is not a proper subject of judicial notice, as stated on the record at the September 25, 2012 hearing.

occupation, such as white shirts, dark pants and black shoes and belts, all of unspecified design, without requiring the employer to furnish such items. If a required black or white uniform or accessory does not meet the test of being generally usable in the occupation the employee may not be required to pay for it.

(NOL, Exh. 1 [excerpt of DLSE Enforcement Manual quoting IWC Wage Order Statement of Basis] at § 45.5.5.)[4] This concept of wardrobe items "of unspecified design," but of a specified color, which are "usual and generally usable in the occupation" thus clarifies the meaning of "distinctive."[5]

The DLSE Enforcement Manual and the Opinion Letters cited help clarify the meaning that the agency has ascribed to "uniform" and to "distinctive" for enforcement purposes. Citing to a 1994 Opinion Letter, the DLSE Enforcement Manual articulates the agency's position that white nurse uniforms, which can be worn wherever the nurse is employed, are "generally usable" and not subject to the reimbursement requirement. (NOL, Exh. 1 at § 45.5.2.) But if an employer required that the same standard nurse's uniform be worn by employees in a different occupation, such as housekeeping or clerical, that attire would not be "generally usable in the occupation" and the employer would be required to reimburse its employees. (NOL, Exh. 1 at § 45.5.3.) Further, citing a 1990 Opinion Letter and a prior enforcement action, the DLSE Enforcement Manual states the agency's position that requiring tropical shirts (for restaurant employees) or a combination of a blue shirt with tan or khaki pants (for video store employees) would make the apparel "so distinctive as to require that the employer pay for the cost of such clothes." (NOL, Exh. 1 at § 45.5.6.)

---

[4] The DLSE Enforcement Manual section citing this Statement of Basis noted that "[t]his language appeared in the Statement as to the Basis for the 1980 and subsequent Orders and inasmuch as no substantive changes were made to the language dealing with uniforms, the basis for the language remains valid." (NOL, Exh. 1 at § 45.5.5.)

[5] Defendant argues that the IWC and DLSE interpretations should be construed as creating a two-part test: (1) whether clothing is a "uniform;" and (2) even if it is a uniform, whether it fits an "exception" to reimbursement because it is "generally usable in the occupation." (*See* Motion at 5 [Dkt. No. 46-1].) The Court does not read the "generally usable" interpretive statements as creating an exception but simply clarifying the meaning of "distinctive" in the context of a uniform.

United States District Court
Northern District of California

1

Additional DLSE Opinion Letters further describe the contours of the term "uniform."  So,

2

for example, the DLSE has stated its view that a requirement for maître d's and hosts at restaurants

3

to wear not simply a white shirt and black pants but a tuxedo constituted a "uniform" because

4

tuxedos are not "basic wardrobe items" and "are generally not usable on an industry wide basis [like]

5

the nurses' white uniforms." (NOL, Ex. 9 [DLSE Opinion Letter dated November 3, 1989].)  In

6

response to an inquiry as to whether a requirement that retail sales employees wear "metal-free"

7

clothing so as to easily pass through the store's metal detectors, the DLSE opined that although such

8

clothing (e.g., sweatpants, pajama bottoms, or slippers) might have "common personal utility" or

9

"value outside the employment," such items were of a "distinctive design" and were required as a

10

condition of employment, making the required clothing a "uniform" for which the employer would

11

be required to reimburse its employees. (NOL, Ex. 7 [DLSE Opinion Letter No. 1994.02.16-1].)  By

12

contrast, DLSE has opined that requiring restaurant employees to wear short sleeve polo shirts of

13

"unspecified manufacturer in one of five general colors" is not subject to the Wage Order because

14

the "very general nature" of the company's requirement "takes it out of the category of a 'distinctive

15

design' or 'distinctive color.'"  (NOL, Ex. 3 [DLSE Opinion Letter dated October 3, 1994].)

16

Taking into consideration the language of the Wage Order and the interpretations of both the

17

IWC and DLSE, as well as the overall context of the purposes of the Wage Order, the Court

18

concludes that "of distinctive design or color" is best understood to mean: of a specified color or

19

design, or both, that is not usual or common *within the employee's occupation*.  Put differently, if an

20

employer specifies a particular color or design of clothing, unless that color or design is common

21

within the occupation, the employer is required to reimburse employees for its cost.  However, if the

22

attribute specified is common within the *same* occupation, the employer is not so obligated.  Thus,

23

while requiring a nurse to wear a standard, white nurse's uniform may specify color and design, both

24

the design and color are common within the nursing occupation such that they do not qualify as a

25

26

27

28

9

"uniform" for which the employer must reimburse the employee.  On the other hand, when the employer specifies a particular design (metal-free, tropical) or a specific color combination (blue shirt with tan pants), unless that design or color specification is common to the occupation (like the white shirt and black pants for restaurant employees) it is a "uniform" and the employer is obligated to reimburse employees for its cost.

Here, Defendant's Guidelines specify the color and design of pants employees must wear. The parties are in dispute as to whether such design and color are common within the occupation, and indeed as to the proper scope of the occupation the Court should consider for comparison. Remarkably, both parties have failed to submit admissible evidence on these issues.

In support of its motion, Defendant assumed, without further authority or explanation, that the relevant occupation is the "retail sales occupation" generally and offered comparisons to employees at Target, Wal-Mart, Sears, and others.  Defendant requested that the Court take judicial notice of several items offered to prove the proposition that "[k]haki-colored pants are used as part of the dress code for several major retail stores."  (DF, Fact 6.)  However, as set forth on the record at the hearing, the documents offered in support of this proposition (Defendant's Exh. 19, 20, 21) are not proper subjects of judicial notice and not admissible evidence to prove this purported "fact."[6]

In support of their cross-motion, Plaintiffs asserted that the relevant occupation for comparison is the mobile wireless retail occupation.  They offered evidence in support of their contention that other major wireless providers, as well as other retail stores, do not allow their retail sales employees to wear Dockers-style twill or chino pants in traditional khaki color.  (PF, Facts 10

---

[6]  Defendant requested that the Court take judicial notice of online print-outs of various retail clothing catalogs and news or online blog articles regarding the prevalence of khaki pants both in and out of the work place.  (*See* Def.'s Exhs. 11-15, 20-23.)  As stated on the record at oral argument, these documents are not the proper subject of a request for judicial notice and, standing alone, are not admissible.

and 11.)  Again, the evidence offered in support of these contentions is not admissible, as the Court set forth on the record at the hearing.[7]

Without any admissible evidence in the record regarding the appropriate comparison occupation and whether "Dockers-style pants in traditional khaki color" are generally usable in that occupation, the Court cannot decide, as a matter of law, whether Defendant is obligated to reimburse Plaintiffs and similarly situated employees for the costs of purchasing such clothing.  Moreover, because the parties disagree on the definition of the relevant occupation, this issue alone raises a triable issue of fact and precludes summary judgment.

### CONCLUSION

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment.

**IT IS SO ORDERED**.

**Date: December 10, 2012**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7]  Plaintiffs offered the declaration of Rubi Quihuis, a law clerk working in their counsel's office, who went to several local retail wireless mobile retailers and made observations of the types of pants the employees were wearing.  (Declaration of Rubi Quihuis, Dkt. No. 47-7.)  Defendant objected to this declaration on the grounds that this witness was not disclosed as required by Rule 26 of the Federal Rules of Civil Procedure.  More significantly, however, the declaration did not have sufficient indicia of reliability or relevance to the matters before the Court.  Thus, the Court granted Defendant's motion to strike.  The Court has not considered any statement therein in connection with this ruling.

United States District Court
Northern District of California